## A. & J. TROUNSTINE & CO. V. A. H. SELLERS.

1. CONTRACT; *Acceptance; Time.* Where a proposition to enter into a contract is made, and no time of acceptance is fixed by the party proposing, it must be accepted within a reasonable time.

2. CONTRACT; *Proposition by Letter; Prompt Reply.* Where a proposition to sell a stock of merchandise is made to a distant party by letter, in which he asks for an early response, the proposer has a right to expect a prompt reply through the mail, which is the usual mode of accepting an offer made by letter, or else by some other equally expeditious means.

3. CONTRACT, *Not Consummated.* A mere uncommunicated purpose to accept an offer does not constitute an acceptance, and where parties are distant and the contract is to be made by correspondence, the writing of a letter or telegram containing a notice of acceptance is

not of itself sufficient to complete a contract. In such a case the act must involve an irrevocable element, and the letter must be placed in the mail, or the telegram deposited in the office for transmission, and thus placed beyond the power or control of the sender, before the assent becomes effectual to consummate a contract; and not then, unless the offer is still standing.

4. ———— *No Acceptance.* The mere determination to accept an offer received by letter, and the act of the party to whom it is made in starting on a journey with the intention of meeting the proposer and accepting the offer, where no notice of his intention is sent to or received by the proposer within a reasonable time, is no more than a mere mental assent, and does not amount to an acceptance.

*Error from Franklin District Court.*

REPLEVIN, brought by *A. & J. Trounstine & Co.*, to recover from *A. H. Sellers* the possession of a stock of ready-made clothing of the alleged value of $2,085.20. It was tried at the January Term, 1885, without a jury, and findings of fact and law were made by the court, which are as follows:

"1. The plaintiffs are, and at the date of the several transactions hereinafter referred to were, copartners engaged in carrying on the wholesale clothing business at Cincinnati, Ohio. At the same time Samuel G. Moore and H. M. Weaver were copartners under the firm-name of Moore & Weaver, engaged in carrying on a general retail business at Ottawa, Kansas, in dry goods, clothing, etc. They continued such business up to December 15, 1884, when they executed certain mortgages on their stock as hereinafter specified.

"2. For the past four years John W. Fraser has been a traveling salesman for the plaintiffs. As such salesman he called at the store of Moore & Weaver, in Ottawa, in July, 1884, and solicited an order for clothing for the then approaching fall trade. Some conversation was had between Mr. Fraser and Moore & Weaver with respect to such order, but no agreement was made between them for the sale or purchase of goods.

"3. Afterward, about September 1, 1884, Mr. Weaver being about to proceed to Chicago to purchase goods for his firm, in pursuance to an understanding arrived at in the conversation at Ottawa, telegraphed the fact to Mr. Fraser, who thereupon met him in Chicago, Ill., for the purpose of renewing negotiations for Moore & Weaver's order for clothing.

"4. And thereupon, in the early part of September Mr.

Fraser, as the agent for the plaintiffs, sold to Mr. Weaver for the firm of Moore & Weaver, the bill of clothing set out in the schedule annexed to the plaintiffs' petition, amounting, at the prices agreed upon, to $2,085.20, upon the following terms, viz.:

"5. Moore & Weaver were to have a discount of 6 per cent. off the prices named, not later than ten days after January 1, 1885, and a credit was given them until the expiration of such period for discount.

"6. Immediately after obtaining the order for the goods, Mr. Fraser communicated the order and terms of sale to the plaintiffs, who thereupon selected and shipped the goods as ordered, to Moore & Weaver, at Ottawa, Kansas, who received the goods by due course of freight, opened the same, placed them on sale with their other goods in their store as part of their stock in trade, and proceeded to sell the same to their customers in the usual course of trade.

"7. From the receipt of such goods up to December 15, 1884, Moore & Weaver, in the course of their retail trade, sold out of said goods articles to the amount of $756.25, estimated at the cost price thereof, leaving on hand of such goods the amount of $1,328.95, estimated also at such cost price, which were taken under the order of replevin in this action.

"8. Mr. Fraser, as salesman for the plaintiffs, had authority to sell goods on four months' credit, and to allow a discount of 6 per cent. not later than ten days from the date of the sale, and 5 per cent. if paid in thirty days. The discount of 6 per cent. not later than January 1, 1885, allowed to Moore & Weaver, was however accepted and approved by the plaintiffs.

"9. On November 10, 1884, Moore & Weaver wrote a letter to the plaintiffs, claiming that they were to have a credit of four months on said bill from January 1, 1885, (if not discounted in ten days after January 1, 1885.) This letter was received by the plaintiffs, who thereupon, on November 14, 1884, answered by letter to Moore & Weaver, denying their claim, and insisting that the credit expired in ten days after January 1, 1885.

"10. On November 16, 1884, the letter from plaintiffs last mentioned having been received, Moore & Weaver replied by letter addressed to the plaintiffs, still insisting that by the terms of sale agreed upon with Mr. Fraser, they were to have the additional credit of four months from January 1, and adding: 'If you think we are misrepresenting the facts in the case, we will return the goods which we have on hand, and

29—35 KAS.

pay for what we have sold out of them. Hoping to hear from you soon, we remain,' etc.

"11. The last letter from Moore & Weaver was received by the plaintiffs a few days thereafter by the usual course of mail, but was never answered. (And the proposition therein made was never accepted, unless the demand for the goods hereinafter stated was an acceptance.)

"12. On the 15th day of December, 1884, Moore & Weaver executed a mortgage on their entire stock of merchandise, including the goods purchased of the plaintiffs and remaining unsold, to Messrs. P. Lanning & Son and seven others, their creditors, to secure various sums due said creditors respectively, amounting in the aggregate to $4,078.64. This mortgage was filed with the register of deeds on the day of its date, and on the morning of December 16, 1884, the mortgagees therein named took possession of the stock under their mortgage, and placed A. H. Sellers, defendant, in charge thereof as their agent and trustee to sell the goods and apply the proceeds on the mortgage debts. On the 16th day of December, 1884, Moore & Weaver executed a second mortgage on their entire stock to Messrs. Bates, Reed & Cooley and a number of others, (their creditors not named in the first mortgage,) to secure various sums due said mortgagees respectively, amounting in the aggregate to $11,668.08. Among the mortgagees named in this second mortgage are the plaintiffs, A. & J. Trounstine & Co., and the mortgage recites an indebtedness to them of $2,085.20. The plaintiffs did not know of its execution at the time it was executed. It was filed with the register of deeds of this county on the day of its date, and recites that it is subject to said first mortgage.

"13. On receipt of Moore & Weaver's letter of November 16, 1884, there were four members of plaintiffs' firm capable of traveling to Ottawa. Mr. John W. Harper attended to a great deal of the credit business, and was largely employed in traveling and settling up disputed claims. Important business matters of the firm in Indiana and Illinois demanding his immediate attention, he came to Ottawa as soon as he could after getting through with those matters, arriving here on the morning of December 16, 1884, at one o'clock A. M. On that day he found that the goods had been mortgaged as stated in the 12th finding, and made demand for the goods the same day.

"14. On the 16th of December, 1884, A. H. Sellers being in possession of the store and stock under the mortgage first above named, was proceeding to sell the goods and apply the

proceeds on the mortgage, when Mr. John W. Harper of the plaintiff firm came to Ottawa and proceeded to identify the articles remaining unsold of the goods so sold to Moore & Weaver, and demanded the same of Mr. Sellers, who refused to yield possession. Thereupon, on December 17, 1884, the plaintiffs brought this action and replevied the goods. No redelivery bond having been given, the goods were turned over to the plaintiffs. A schedule thereof is attached to the sheriff's return. The goods so seized are a part of the goods sold by plaintiffs to Moore & Weaver.

"15. I find that the value of the property replevied was $1,195.58 at the date that it was taken in this action."

### CONCLUSIONS OF LAW.

"1. At the date of the commencement of this action, the defendant, A. H. Sellers, was entitled to the possession of the property taken under the order of replevin in this action, and did not wrongfully detain the same.

"2. The defendant is entitled to a return of the property so taken, or the value thereof, to wit, $1,195.58, in case a return cannot be had; and judgment must be entered accordingly, and for costs, against the plaintiffs."

Upon the findings of fact and of law, the court rendered judgment in favor of the defendant that the property replevied in the action be returned to him, or in default thereof, that he recover of the plaintiffs $1,195.58, the value of the property, together with the costs of suit. The plaintiffs excepted to the findings and judgment, and have removed the case to this court for review.

*John W. Deford*, for plaintiffs in error.

*C. B. Mason*, and *Edwin A. Austin*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The right of possession to the clothing in controversy depends upon whether the proposition made to the plaintiffs by Moore & Weaver on November 16, 1884, was accepted and became a contract before the execution of the mortgages by Moore & Weaver to their creditors on the 15th day of December, 1884. It appears that the plaintiffs, who were engaged in the wholesale clothing business at Cincinnati,

Ohio, sold on credit a stock of clothing through one of their agents, to Moore & Weaver, at Ottawa, Kansas. The goods were sold and shipped in the early part of September, 1884, upon the terms that Moore & Weaver were to have a discount of 6 per cent. off the prices named not later than ten days after January 1, 1885, and credit was given them until the expiration of that time for a discount. On November 10, 1884, Moore & Weaver wrote to the plaintiffs, claiming that if they did not choose to discount the bill within ten days after January 1, 1885, they were entitled to a credit of four months from that time. The plaintiffs answered this letter on the 14th of November, 1884, insisting that the credit did not extend beyond ten days after January 1, 1885. Moore & Weaver again wrote to the plaintiffs, on November 16, 1884, insisting on the additional credit of four months from January 1, and in closing their letter, stated: "If you think we are misrepresenting the facts in the case, we will return the goods which we have on hand, and pay for what we have sold out of them. Hoping to hear from you soon, we remain," etc. This letter was received by the usual course of mail, but was never answered. It seems that soon after the plaintiffs received the letter of November 16, Mr. Harper, one of their firm, started out from Cincinnati on a business trip, with the intention of attending to some important business matters of the firm in Indiana and Illinois, which demanded immediate attention, and with a view of coming on to Ottawa as soon as those matters were disposed of. He reached Ottawa on the evening of December 16, 1884, one month after the proposition was made, when he demanded the possession of the goods from the defendant Sellers, who was in charge of them under the mortgages executed the preceding day.

It is insisted by the plaintiffs that the court erred in not holding the conduct of the plaintiffs in starting from Cincinnati as an acceptance of the proposal made by Moore & Weaver, and as a completion of the contract, which vested the title and right of possession of the goods in the plaintiffs. In our opinion the conduct of the plaintiffs did not indicate a purpose to

accept the proposal made by Moore & Weaver, and cannot be regarded as an acceptance. Although the proposition did not within itself limit the time or manner of acceptance, it cannot be regarded as a perpetual one, forever open to be accepted or rejected at the will of the plaintiffs. In *Mactier v. Frith,* 6 Wend. 103, the rule laid down with respect to a proposal made by letter is, that the offer continues until the letter containing it is received "and the party has had a fair opportunity to answer it." It has also been held that "a letter written would not be an acceptance so long as it remained in the possession or under the control of the writer. An offer then made through a letter, is not continued beyond the time that the party has a fair opportunity to answer it." (*Averill v. Hedge,* 12 Conn. 423.) Upon receipt of Moore & Weaver's letter, the plaintiffs were bound "to accept in a reasonable time and give notice thereof, or the defendant was no longer bound by the offer." (*Chicago & G. E. Rld. Co. v. Dane,* 43 N. Y. 240. See also *Martin v. Black's Executors,* 21 Ala. 721; *Admr's v. Mocksley,* 2 Metc. [Ky.] 309; *Minn. Oil Co. v. Collier Lead Co.,* 4 Dill. 43; *Judd & Co. v. Day Bros.,* 50 Iowa, 247; *Taylor v. Rennie,* 35 Barb. 272; Benjamin on Sales, 61, note 7.)

1. Proposition
to contract;
acceptance.

The offer which was made was the result of correspondence through the mails, and as the dates of the letters indicate, they had been promptly answered and responded to by both the parties. Besides, the letter containing the proposal by its terms enjoined an early reply. It closes with the words, "Hoping to hear from you soon," etc. While the mode of acceptance was not indicated in the letter making the offer, the nature of the negotiations as well as the manner in which they were carried on, suggested not only the desire and necessity for an early reply, but also that the parties making the offer would expect an answer through and by the usual course of the mails. It has been said that —

" Where an individual makes an offer by post stipulating for, or by the nature of the business having the right to expect, an answer by return post, the offer can only endure for

a limited time, and the making of it is accompanied by the implied stipulation that the answer will be sent by return post. If that stipulation is not satisfied, the person making the offer is released from it." (*Maclay v. Harvey*, 90 Ill. 525; *Dunlop v. Higgins*, 1 H. L. Cas. 387.)

If the plaintiffs intended to accept the proposal, it was their duty to have signified their acceptance, either through the mails or by some equally expeditious means.

*2. Proposition by mail; prompt reply.* The plaintiffs say that they determined to accept the proposition as soon as the offer was received, and that Mr. Harper's act in starting to Ottawa was an overt act amounting to an acceptance. Every overt act caused by a determination to accept a proposition does not constitute an acceptance. If it was the intention of the plaintiffs to accept the offer, they could and most likely would have written Moore & Weaver a letter, which was the usual mode of communication between the parties, and which is the usual mode of accepting an offer made by letter. Instead of sending a letter or telegram announcing a determination to accept, one of them started on a business trip through the country, intending finally to come to Kansas and take the goods, which trip consumed almost thirty days' time, during which time they were at liberty to change their purpose and reject the proposition. The mere determination to accept an offer does not constitute an acceptance which is binding on the parties. "The assent must either be communicated to the other party, or some act must have been done which the other party has expressly or impliedly offered to treat as a communication." (Benjamin on Sales, 54.) Where parties are distant,

*3. Contract, not consummated.* and the contract is to be made by correspondence, the writing of a letter or telegram containing a notice of acceptance is not of itself sufficient to complete a contract. In such a case the act must involve an irrevocable element, and the letter must be placed in the mail, or the telegram deposited in the office for transmission, and thus placed beyond the power or control of the sender, before the assent becomes effectual to consummate a contract; and not then,

unless the offer is still standing. (See authorities above cited.) The action of the plaintiffs in sending a member of the firm by a circuitous route to Kansas, was no more than a mere mental assent, which, as we have seen, is insufficient. There was no act of acceptance until Harper arrived at Ottawa and demanded the goods. This was not within a reasonable time, and when the proposition was not met within a reasonable time, Moore & Weaver were at liberty to regard their proposition as rejected, and to make other disposition of their property, which they manifestly did do.

*4. No acceptance.*

In regard to the objections made to the findings of fact, it is enough to say that after an examination of the record, we think they conform to and are supported by the testimony.

Finding no error in the record, the judgment of the district court will be affirmed.

All the Justices concurring.