## LESZYNSKY v. MEYER.[*]

### S. F. No. 1071; June 30, 1898.

53 Pac. 703.

Brokers—Compensation for Sale of Realty—Insufficient Evidence.—On January 17, 1891, plaintiff, at London, transmitted to decedent an offer from a corporation there to purchase certain land owned by him which he accepted on conditions, one of which was that £10,000 be advanced as security for performance. On April 25th plaintiff wrote, asking that the conditions be waived. No direct response was made, and decedent, on June 2d, wrote that, unless he received notice by July 1st that the matter was closed, he would withdraw about one-half of the land from the pending proposals. No such notice was sent, but plaintiff wrote that the letter was not clear, and that he expected to hear from decedent that the proposition was satisfactory. On December 5th plaintiff wrote that the corporation would be glad to do business, and requested decedent to send someone to London to complete the negotiations as outlined in their former propositions, which letter was delivered by R. On January 15, 1892, decedent replied that he was sorry his last letter was not sufficiently clear, and that he was willing to sell on the terms proposed in their letter of January 17, 1891, or would divide the property into two

*Rehearing denied.

portions, and, if the matter was definitely settled, his son in law could go to London, provided £1,000 was paid for his expenses. On March 16th plaintiff wrote that the corporation was in liquidation, and he would try to sell the land to others. R. testified that when he delivered the letter of December 5, 1891, decedent said he knew satisfactory terms had been made between himself and the corporation about June or July, 1891, and that plaintiff had effected a sale with these parties, and that he should have gone across, and closed up the matter on the other side. Held, in an action to recover for services rendered in procuring the purchaser for the land, that there never was such a meeting of the minds of the negotiating parties as would authorize recovery.[1]

APPEAL from Superior Court, City and County of San Francisco.

Action by Julius Leszynsky against H. L. E. Meyer, administrator of the estate of Joseph P. Hale, deceased, to recover for brokerage commission. From a judgment of nonsuit plaintiff appeals. Affirmed.

George Leszynsky for appellant; A. D. Keyes for respondent.

BRITT, C.—According to the view taken by plaintiff (which for present purposes we may concede to be correct), the cause of action on which he rested his case at the trial is to be regarded as founded on the asserted liability of Joseph P. Hale for services rendered by plaintiff in procuring a purchaser for a great tract of land owned or controlled by Hale, and situated in Lower California; the reasonable value of such services being stated at the sum of $160,000. On the evidence for plaintiff the court below rendered judgment of nonsuit against him. The greater part of the evidence consisted of a series of letters passed between plaintiff at London, England, and Hale at San Francisco, California. It will be sufficient to state the effect of only a few of these. Hale died before this action was begun. On January 17, 1891, plaintiff procured and transmitted to Hale an offer in writing from a con-

---

[1] Cited and approved in Niles v. Hancock, 140 Cal. 162, 73 Pac. 842, where the court says: "The consent essential to a contract must be communicated by the parties to each other, and consent can be communicated with effect only by some act or omission of the party contracting, by which he intends to communicate it, or which necessarily tends to such communication."

cern styled usually in the correspondence the London and Amsterdam Trust Company. Such offer was a proposal to form a corporation to "take over, work, and develop the property," and to pay Hale therefor £400,000 as follows: Cash, £100,000; six per cent first mortgage debentures, £100,000; shares in such proposed corporation, £200,000. Hale replied that he would accept the offer on conditions, one of which was that said trust company should advance £10,000 cash as security for performance. April 25, 1891, plaintiff wrote to Hale, asking that he waive this condition. Hale made no direct response, but on June 2, 1891, he wrote to plaintiff saying that unless he received notice by July 1st that the matter was closed, he would withdraw about one-half of the tract from the pending proposals. No such notice was sent, but plaintiff claims that Hale's letter of June 2d was intended as an acceptance of the original offer of said trust company. The following is the more material evidence in which plaintiff sees color for this contention: July 10, 1891, plaintiff wrote to Hale that the letter of June 2d was not clear, and saying that he expected to hear from him fully that the proposition of said trust company was satisfactory. Hale made no reply to this. On December 5, 1891, the plaintiff wrote to Hale that the London and Amsterdam Trust Company "would be glad to do the business with your Lower California lands. . . . . To carry out their program it would be necessary to send over here power of attorney either to your son in law, the Honorable Mr. Boyle, or anybody else you please, to sell your land on the terms and price outlined in their former propositions"; which letter was delivered to Hale in San Francisco by one A. J. Rich. January 15, 1892, Hale replied: "I regret that my last letter should not have seemed sufficiently clear to you, and will endeavor to be more explicit in this one. I am willing to sell the whole of my property in Lower California . . . . to the London and Amsterdam Trust Company on the terms they proposed in their letter dated 17th January of last year, . . . . or I am prepared to divide my lands into two portions, and dispose of them separately [stating terms at length]. . . . . My son in law, the Honorable R. Boyle, is with me here, and, if the matter were definitely settled, he would, if necessary, go over to London to see the directors. In the event of his being sent, I should, of course, expect a sum, say £1,000, to be paid to my bankers in London for his expenses, which

sum would be deducted from the first cash payment.'' Reply-
ing, plaintiff wrote on March 16, 1892, that said trust com-
pany was then in liquidation, and he was trying to sell the
land to other parties. Said A. J. Rich testified that when he
delivered to Hale plaintiff's letter of December 5, 1891, Hale
said he knew ''that satisfactory terms had been made between
himself and the London and Amsterdam Trust Company
about June or July, 1891; that Mr. Leszynsky had effected a
sale to these parties; and that he [Hale], according to his
agreement, should have gone and closed up the matter on the
other side.''

Looking to the said letters, it is plain that there never was
a meeting of minds of the negotiating parties: Masten v.
Griffing, 33 Cal. 111. Hale's letter of June 2, 1891, contained
no language intimating that he waived an immediate payment
of £10,000; and when, in December following, plaintiff sought
to continue the treaty, the provision was added that Mr.
Boyle or other person in London must be empowered to sell
the land on terms formerly stated. The reply of Hale was,
not that he had at any time before accepted the trust com-
pany's offer, but that he was then, on January 15, 1892, will-
ing to sell on the terms that company had proposed on Jan-
uary 17, 1891, and would meet the new requirement by sending
Boyle to London, expecting ''of course,'' an advance of £1,000
for his expenses. Why should Hale have proposed new terms
for the sale of his land by parcels if he had, or believed that
he had, previously accepted an offer for the whole? Thus
the negotiation ended. The prospective purchaser went into
liquidation, and Hale's demand for an advance of £1,000 for
the expenses of an attorney in fact—declared by plaintiff to
be necessary for closing the business—was never answered.
The testimony of Rich, under the circumstances appearing, is
of no consequence. At the most it tended to show only that
Hale had intended to accept the offer made to him. This was
not sufficient. Notice of acceptance must have been commu-
nicated to the plaintiff at least, if not to the trust company
also. Granting that Hale's remarks to Rich were declaratory
of either present or past acceptance of the trust company's
offer, still there is no proof that Rich communicated the same
to anybody, or that he had authority so to do, or that such
acceptance was ever in any manner put in course of trans-
mission to plaintiff. A contract cannot be made by manifest-

ing to strangers that assent which the law requires to be communicated mutually between the parties themselves: Civ. Code, sec. 1565; White v. Corlies, 46 N. Y. 467; Trounstine v. Sellers, 35 Kan. 447, 11 Pac. 441. The judgment should be affirmed.

We concur: Chipman, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment is affirmed.