## McALISTER v. KLEIN et al.

No. 9636—Opinion Filed May 17, 1921.

(Syllabus.)

**1. Sales — Written Proposal—Waiver of Conditions as to Acceptance.**

Where a person, in making a bid or proposal for the furnishing of structural steel, makes such proposal in writing on a stock form of letter-head which contains printed matter at the bottom, to the effect that "This proposal made for immediate acceptance," the person submitting such proposal, by his acts or by oral agreement, may waive such printed statement.

**2. Same—Acceptance—Varying Terms of Proposal.**

Where a manufacturer of structural steel for the erection of bridges submits his proposal to furnish the steel for certain bridges to the contractor having the contract for the erection of such bridges, and makes an oral statement to such contractor at the time of submitting said proposal that he does not carry in stock some of the sections of steel specified in the contract, and the contractor states to him that he thinks he can get the engineer to change his drawings so that the sections of steel carried by such manufacturer can be used, held, that a letter of acceptance of such proposal containing the clause, "There may be some small changes that will affect the tonnage, the price for any such additions or deductions to be the same as the tonnage price used, in your proposal as per our oral agreement," does not thereby constitute a new proposal or vary the terms of the proposal as made by such manufacturer.

**3. Same—Acceptance by Mail—Miscarriage of Letter—Effect.**

If a manufacturer of structural steel makes a proposal to a contractor to furnish certain steel for the erection of bridges by said contractor and the nature of their dealings is such that the contractor is to submit his acceptance through the United States mails, and he writes a letter of acceptance, places it in an envelope, addressed to such manufacturer at his regular post office address and deposits said letter in the United States post office with the postage prepaid thereon, this constitutes an acceptance, whether the manufacturer receives said letter or not.

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by W. C. McAlister, against J. B. Klein and William Klein, individually and as partners under the firm name of J. B. Klein Iron & Foundry Company, to recover damages for a breach of contract. Judgment for the defendants, and plaintiff appeals. Reversed and remanded.

R. E. Stephenson, for plaintiff in error.

Shirk, Danner & Fowler, for defendants in error.

MILLER, J. This action was commenced in the district court of Oklahoma county by W. C. McAlister, plaintiff, against J. B. Klein Iron & Foundry Co., a partnership, composed of J. B. Klein and William Klein, as defendants, to recover damages for the breach of a contract in failing to furnish certain structural steel for the erection of five bridges in Bryan county, Oklahoma. The case was tried to a jury, and the verdict was in favor of the defendants. Plaintiff filed his motion for a new trial, which was overruled by the court and judgment rendered on the verdict in favor of the defendants, to reverse which judgment the plaintiff perfected this appeal. For convenience the parties will be referred to as they appeared in the court below. The facts are as follows:

The plaintiff on or about November 20, 1915, entered into a contract with the board of county commissioners of Bryan county, Oklahoma, for the construction of five bridges within said county. The defendants have their place of business and post office address at Oklahoma City. About the 29th day of November, 1915, the plaintiff came to Oklahoma City and submitted to the defendants blue prints of these five bridges and asked for estimates of the price at which the defendants would furnish the steel for these bridges. Defendant J. B. Klein took the blue prints and figured the estimate and submitted a proposal in writing on November 29, 1915. The estimated cost of the steel for the bridges amounts to $3,068.05. The letter in part states:

"These bridges to be made according to your drawing and to receive one shop coat of paint before shipment.

"We agree to start shipping this material within six weeks from date order is received and to make complete shipment within three weeks from date first shipment is made."

This letter was written on a stock form of letter-head which contained certain printing on the top and bottom. At the bottom it had one clause reading as follows:

"This proposal is made for immediate acceptance and upon the understanding that if accepted the following conditions are agreed to: * * * "

The conditions agreed to then provide that it shall be subject to strike or delays beyond defendants' reasonable control. This letter was handed by defendant J. B. Klein, personally, to plaintiff, McAlister. The plaintiff and defendant had some conversation,

both at the time the blue prints were submitted and at the time the proposal in the form of the letter above referred to was made by defendant to the plaintiff. The plaintiff took this letter or proposal home with him and on December 8, 1915, wrote the following letter addressed to J. B. Klein Iron & Foundry Company, Oklahoma City, Oklahoma, and deposited the same in the post office at Hugo with the postage prepaid thereon:

"Gentlemen:

"I herewith accept your proposal dated November 29, 1915, for furnishing the bridges for Bryan county as per plans and specifications. There may be some small changes that will affect the tonnage, the price for any such additions or deductions to be the same as the tonnage price used in your proposal as per our oral agreement.

"I will send you the blue print as soon as I can agree with engineer as to the changes which will be within the next two or three days.

"Yours Truly, ———"

On December 18, 1915, the plaintiff wrote the following letter which was addressed to the defendants at Oklahoma City, Oklahoma, and deposited it in the United States post office at Hugo with the postage prepaid thereon:

"Gentlemen:

"I am mailing you under separate cover plans of the Bryan county bridges. The only changes to be made in these bridges from the original plan is in the rails of the 80-foot span bridge where you will use 2 1-2x2x3-16 instead of the 3x2x3-16 as shown on the plan; and you shall use 8-ft. 18-lb. I's on the two 45 ft. spans for top cord instead of 6-ft. 22 3-4-lb. as shown on the plans.

"I am enclosing herewith a copy that part of the specifications relating to this work which has to do with the fabrication of the bridges.

"Kindly acknowledge receipt of same.

"Yours Truly, ———"

Defendants claim they never received either of these letters or the plans and specifications, and, therefore, there was no contract. They further claim that the letter of December 8th does not constitute an acceptance, but is a counter proposition.

The plaintiff makes six assignments of error. These may all be disposed of on the question of giving and refusing to give certain instructions.

Plaintiff testified he told defendant in the conversation with J. B. Klein on November

29, 1915, that he had sent blue print to other manufacturers of structural steel and would not be able to give him a definite answer on his proposal for about ten days; that he would write him as soon as he had heard from the other companies. That defendant J. B. Klein answered: "This would be all right, or words to that effect." If that is true, defendants thereby waived the printed statement on their letter-head to the effect that this was for immediate acceptance, and this should have been submitted to the jury under proper instructions.

The letter of acceptance written by plaintiff on December 8, 1915, when viewed in the light of the testimony of J. B. Klein, does not vary the written proposal made by him. His testimony on direct examination is in part as follows:

"Q. Did you ever give Mr. McAlister an estimate for certain bridges in Bryan county along the latter part of November, 1916? A. Yes, sir. Q. In whose office did you prepare that estimate? A. Why, I gave him that estimate, I met him in Lisle-Dunning's Construction office, I think, and took that and went over to my office and figured them and then I handed him the estimate personally myself. Q. To Mr. McAlister? A. Yes, personally I did. Q. Who was present when you figured those plans? A. I don't think anybody was. Q. Was anybody present when you gave that estimate to Mr. McAlister? A. If I remember, a girl was there. Q. Who was it? A. Yes, Mr. Lisle was there, or Mr. Dunning, I don't know now which one; I think it was Mr. Lisle, of the Lisle-Dunning Construction Company. Q. Was there any conversation between you and Mr. McAlister with reference to the steel that was to be used, or if there was to be any different and it was to be used the same as designated on the plans? A. Yes, sir. Q. In whose office was the conversation? A. I couldn't tell whether or not it was at that time or when leaving there when I put in my bid; it was one time there—I don't know whether it was in that office or in my office when he handed me the plans. Q. Was there anyone present when that conversation occurred? A. I couldn't tell whether or not anybody overheard us. Q. Did you have any conversation about the—or tell the substance of that conversation. A. Well, it was to the effect that some section of the steel called for which I couldn't carry and I mentioned that fact to him. Q. Did he make any reply to that? A. He stated that that could be substituted. Q. Did you point out to him what features and prices on it that you didn't have in stock? A. Well—yes, sir—well, that was feature there; there were some angles and sections for the beam there. Q. What was said? A. Well, he said we could use our stock; he said he would sub-

mit the engineer's drawings, the county engineer's drawings and he would get him to o. k. that, and then he could put in this other stuff; that was what he told me in giving his order."

It is clear from this testimony that there was an oral agreement about some small changes in the dimensions of the steel, and plaintiff was entitled to have this submitted to the jury under proper instructions.

The evidence shows that the defendants wrote a letter on January 6, 1916, to the Virginia Bridge & Steel Company, at Memphis, Tennessee, which indicated that defendants had received the plans and specifications. This letter stated that they had a contract to furnish the steel for these five bridges. On January 20, 1916, they wrote the Virginia Bridge Company of Dallas, Texas, which also discloses they had the plans and specifications. Sometime after this, J. B. Klein found the plans and specifications in his office in Oklahoma City, when urged by the plaintiff to make a search for them.

We think the court committed reversible error in refusing some of the instructions asked for by the plaintiff; and as this case will have to be reversed and a new trial granted, we refrain from discussing the evidence further than is necessary to pass upon the question involved. Under all the evidence in this case the trial court should have given instruction No. 3 asked for by the plaintiff, which is as follows:

"You are instructed that if you believe and find from the evidence in this case that defendants, on November 29, 1915, submitted to plaintiff a written proposal or offer to furnish the iron work for certain bridges in Bryan county, which plaintiff was under contract to construct, and if you further believe and find from the evidence that it was mutually understood between said parties that plaintiff's acceptance of said proposal was to be sent through the mails, and that plaintiff thereafter and on the 8th day of December, 1915, accepted said offer in writing and deposited his acceptance in the United States mail, properly addressed and covered by sufficient postage, the contract was then complete, regardless of whether said acceptance was received by defendants or not."

See Tayloe v. Merchants' Fire Ins. Co., 9 How. (U. S.) 390, 13 L. Ed. 187; Burton v. United States, 202 U. S. 344, 50 L. Ed. 1057; Trounstine v. Sellers, 35 Kan. 447; Egger v. Nesbit (Mo.) 27 S. W. 385.

Instruction No. 12 as given by the court we think fairly covered the measure of damages under section 2852, Revised Laws of Oklahoma, 1910.

The judgment of the trial court is reversed and this cause remanded, with instructions to grant a new trial.

HARRISON, C. J., and KANE, JOHNSON, and KENNAMER, JJ., concur.