**STEBEL et al. v. UNITED STATES.**

No. 46108.

Court of Claims.

Jan. 6, 1947.

Warren Woods, of Atlanta, Ga. (Charles B. McInnis and Philip S. Jessup, both of Washington, D. C., Philip F. Feinberg, of New York City, and Roberts & McInnis, of Washington, D. C., on the briefs), for plaintiffs.

Henry Weihofen, of Washington, D. C., John F. Sonnett, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and MADDEN, JONES, LITTLETON and WHITAKER, Judges.

WHITAKER, Judge.

Plaintiffs sue for breach of contract for the sale to them of 226,003 pounds of paris green.

On March 1, 1943, the United States Navy Yard at Mare Island, California, ad-

vertised for bids for what was called "survey material," among which was 226,003 pounds of paris green. Plaintiffs' bid was high.

The bids were to be opened on March 31, 1943. Not having heard from their bid by April 6, plaintiffs wired the Navy Yard at Mare Island, from their New York office, requesting the name of the successful bidder. On April 13 the Navy Yard wired plaintiffs that a letter of award had been mailed them that day. This telegram was received by plaintiffs on April 14. On April 13 the Navy Yard signed the letter of award and on that day forwarded it and a formal contract to plaintiffs. These were received by plaintiffs on Saturday, April 17, 1943, after the banks had closed for the day.

Immediately upon the opening of the banks on Monday morning plaintiffs secured a certified check for the balance due on the purchase price of the paris green and mailed it to the Navy Yard by air mail, special delivery, and they wired them that they had done so. This check was received by the Navy Yard on April 23. On the same day defendant wired plaintiffs that its award to them for the paris green had been cancelled for the reason that the check for the balance due on the purchase price and the signed contract had not been received.

The advertisement for the bids required bidders to deposit with their bid 25 percent of the amount thereof and to pay the balance within 10 days "from date of award." Plaintiffs duly deposited an amount which was not less than 25 percent of their bid and, as stated, they mailed check for the balance on April 19, which was received by the defendant on April 23.

The letter of award was dated April 10, although it was not signed until April 13. It provided for payment of the balance by April 20. The contract was also dated April 10. It recited that the paris green had been awarded "in accordance with the bid submitted by the contractor (purchaser) and with the notice of award issued by the contracting officer." This, as noted, provided for payment of the balance by April 20.

We are of opinion that plaintiffs complied with the terms of the advertisements for bids, which provided for payment of the balance of the purchase price "within 10 days from date of award." The award was made when the letter of award was signed and mailed, not when it was dated. Burton v. United States, 202 U. S. 344, 384, 26 S.Ct. 688, 50 L.Ed. 1057, 6 Ann.Cas. 362; Northwest Thresher Co. v. Kubicek et al., 82 Neb. 485, 118 N.W. 94, and cases cited. Cf. McAlister v. Klein, 81 Okl. 291, 198 P. 506. This was on April 13. Not before then had the award been made. The typing of the letter on April 10 did not constitute the award, although it may have been typed at the direction of the contracting officer. Until that official had affixed his signature to the letter and mailed it, it was still within his province to change his decision as to whom the award should be made. The contract gave the contracting officer the right to reject all bids at any time prior to acceptance. There had been no acceptance until the letter of award was signed and mailed. Only after he had signed and mailed the letter of award did plaintiffs' right to the merchandise mature.

Plaintiffs certainly had not less than 10 days from that time within which to pay the balance of the purchase price. The contracting officer, of course, had no right to reduce the time allowed in the advertisement for bids for payment of the balance due. Plaintiffs paid the balance within 10 days from the date the letter of award was signed and mailed.

Plaintiffs were notified of the award on the day it was made; hence, we are not presented with the question whether time began to run from receipt of notification or from the date of transmission.

As a matter of fact, the award to plaintiffs was not cancelled for failure to pay the balance when due, although this was assigned as the reason for the cancellation. It was cancelled because the Procurement Division of the Treasury Department wanted the paris green for the British Government. Upon receipt of the request from the Procurement Division that this paris green be turned over to it, the Bureau of

Supplies and Accounts of the Navy Department on April 16 directed the Supply Officer at the Navy Yard, Mare Island, to prepare the 226,003 pounds of paris green for export shipment. In reply the Navy Yard informed the Bureau of Supplies and Accounts that the materials had been awarded to plaintiffs. The Bureau of Supplies and Accounts then directed the Navy Yard to cancel the contract with plaintiffs and to transfer the paris green, as directed, to the Treasury Department. Thereupon, the contracting officer wired plaintiffs: "By direction Navy Department award of paris green cancelled signed contract and check for balance due not received."

■ The defendant had no right to cancel the award to plaintiffs, and in doing so it breached its contract with them and is liable for the damages resulting therefrom.

■ The proper measure of damages is the difference between the purchase price agreed upon and the market price, which we have found was 20 cents a pound, less 2 cents for freight. United States v. Burton Coal Co., 273 U.S. 337, 47 S.Ct. 351, 71 L. Ed. 670; Briggs & Turivas v. United States, 83 Ct.Cl. 664, 686; certiorari denied, 302 U.S. 690, 58 S.Ct. 9, 82 L.Ed. 533.

Plaintiffs offered testimony to show that they had offered this paris green for sale to their customers at 18 cents a pound "freight allowed," and that they had sold 40,000 pounds of it at this price to one party and the same amount to another, subject to approval of the brand, and that they had sold 80,000 pounds at 17 cents, with freight allowed. However, we do not think plaintiffs are limited to the profit they would have made on these sales. Under all the authorities the measure of their damages is the difference between the contract price and the market price.

In the case of United States v. Burton Coal Co., supra, the United States sought to limit plaintiff's recovery to its loss of profit, but the court held that this was not the proper measure of damage, but that the proper measure was the difference between the contract price and the market price. In that case it seems that the Burton Coal Company had a contract with certain mines, as the result of which its profit on the sale of coal to the United States would have been only $46,065.97, whereas the difference between the contract price and the market price was $445,528.40. The court held plaintiff was entitled to the recovery of this amount and was not limited to the profit it would have made of $46,065.97.

Applying that rule to the case at bar, we hold that plaintiffs are entitled to the difference between the contract price and the market price.

If plaintiffs' recovery in this case were limited to the difference between the contract price and the price at which they had offered to sell the merchandise, we have no assurance that plaintiffs would be fully compensated for the damages resulting from defendant's breach. The persons who agreed to purchase the merchandise from plaintiffs may have a cause of action against them for breach of contract. The measure of damages for this breach is the difference between the amount they had agreed to pay plaintiffs for it and the market price. Whether or not such suits will be brought, or what the outcome of them will be, we, of course, do not know; but all such contingencies are taken into account in the well established rule that the measure of one's damages for a breach of contract of sale is the difference between the contract price and the market price. This rule is so well established that we see no justification for departing from it in this case.

At 20 cents a pound, less 2 cents for freight, the market price of the 226,003 pounds was $40,680.54. Plaintiffs agreed to pay defendant therefor $17,031.52, resulting in a loss to plaintiffs of $23,649.02.

■ Plaintiffs are not entitled to recover interest, inasmuch as their suit is one for damages for breach of contract.

Judgment will be entered in favor of the plaintiffs and against the defendant for the sum of $23,649.02. 'It is so ordered.

MADDEN, JONES, and LITTLETON, Judges, and WHALEY, Chief Justice, concur.