## DAVENPORT v. DOYLE PETROLEUM CORPORATION.

No. 30289. April 7, 1942.

Rehearing Denied May 5, 1942.

*126 P. 2d 57.*

Bailey & Hammerly, of Chickasha, for plaintiff in error.

Melton, McElroy & Vaughn, of Chickasha, for defendant in error.

ARNOLD, J. C. J. Davenport commenced this action against the Doyle Petroleum Corporation in the district court of Grady county, Okla. The trial court sustained a demurrer to the evidence, and the plaintiff appealed.

The parties will be referred to herein as they appeared in the trial court.

The plaintiff was the owner of 160 acres of land located in Grady county, Okla. A short time prior to May 18, 1937, defendant, through its agent, R. M. Huffine, and its attorneys, Melton, McElroy & Vaughn, entered into negotiations with the plaintiff for the purchase of an oil and gas lease on said land. On May 18, 1937, the plaintiff executed an oil and gas lease on 120 acres thereof to the defendant and immediately forwarded said lease to the attorneys for the defendant, attaching thereto certain specified instructions.

The oil and gas lease was a regular producers' 88 form lease except in addition to the printed provisions thereof there was included the following typewritten clause:

"Notwithstanding the preceding printed part of this lease, lessee agrees within 60 days from date to begin the actual drilling of a test well for oil or gas on or offsetting the above land, and prosecute such drilling with due diligence to a depth of 3,000 feet unless oil or gas in paying quantities is found at a lesser depth. For failure to commence, prosecute and/or complete said test well, this lease, at the option of lessor, shall terminate."

On May 19, 1937, the attorneys for the defendant forwarded to plaintiff a cashier's check in the amount of $120 and advised plaintiff that the lease had been forwarded to the defendant for its signature. On June 7, 1937, said attorneys, by letter, advised the plaintiff that the lease properly executed by the defendant had been returned to their offices. In said letter they advised, also, "We hold same subject to your agreement."

On June 22, 1937, upon request, said attorneys advised the plaintiff that a derrick had been erected on lands off-setting the said 120 acres. On July 15, 1937, the attorneys, in answer to a request by the plaintiff as to what progress had been made, advised him that it was impossible for the defendant to commence actual drilling within the 60-day period prescribed in the lease, and requested that an extension of 30 days be granted. On July 16, 1937, the plaintiff, by letter, advised said attorneys with reference to such extension, as follows:

"I agree that actual drilling may be postponed to August 1; if, in the meantime, the company has, in your opinion, proceeded with due diligence in preparation for actual drilling and you will so advise me, the actual drilling may be further postponed to August 18.

"This waiver of time of commencement of actual drilling is on condition that the obligations of the company to drill a test well as required by our contract is in no wise affected except as to the time when actual drilling shall be commenced."

Actual drilling was not commenced within the extended time, and on September 14, 1937, the plaintiff filed this action for damages against the defendant for failure to drill the well as required by the terms of the lease. The lease in question and the letter of instructions transmitted by mail to the attorneys for the defendant have been before this court before. Davenport v. Doyle Petroleum Corporation, 187 Okla. 40, 100 P. 2d 445. Therein we held:

". . . The printed portion of the lease is an ordinary 'unless' type lease whereby, at his option, defendant could drill or pay or forfeit, but the added typewritten paragraph, which was part of the consideration for execution of the lease, constituted a drilling contract and expressly gave plaintiff the option to terminate the lease in the event defendant breached the covenant to commence drilling a test well on or offsetting plaintiff's land within 60 days. The express grant to plaintiff of the option to terminate did not preclude him from maintaining an action for damages for breach of the covenant to drill."

In the foregoing construction of said lease we held that this lease constituted a contract to drill, which if not complied with would subject the defendant to damages; that the plaintiff thereby was given an option to terminate the lease if the defendant breached its covenant to drill; that the option in the lease contract to terminate by the plaintiff did not preclude him from maintaining an action for damages based on a breach of the covenant to drill.

The sole contention made by the plaintiff, stated in his language, is that he, "for a paid consideration, granted to defendant the right to elect within 30 days whether it would enter into the contract tendered by plaintiff's proposal, by which the defendant became bound to drill a test well; the method of election was specified in the option granted. Within 30 days defendant performed every act required to show its election. From such facts a mutually binding contract was created."

The only contention made by the defendant is that the restrictions placed on the physical delivery of the lease to the defendant constituted a condition precedent; that actual physical delivery was never made and that for this reason the contract never became binding.

The letter of instructions accompanying the delivery of the lease to defendant's attorneys was in part as follows:

(1) "That I be paid by May 22nd the sum of $120.00 to cover the option of Doyle Petroleum Corporation to obtain the enclosed lease by having its proper officers, duly authorized, to execute the same within 30 days from this date, and redeliver the same to you, and that you within 10 days after its execution by said company certify to me that same has been executed and redelivered to you.

(2) "That you be authorized to deliver the same to the Doyle Petroleum Corporation whenever you are convinced that the actual drilling has been commenced within the time required by said lease and certify to me in writing that said company has actually begun such drilling.

(3) "Time is of the essence of this proposal in all respects."

Section 9427, O. S. 1931, provides:

"If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to."

Section 9428, O. S. 1931, provides:

"Consent is deemed to be fully communicated between the parties as soon as the party accepting the proposal has put his acceptance in the course of transmission to the proposer, in conformity to the last section."

Section 9429, O. S. 1931, provides:

"Performance of the conditions of a proposal, or the acceptance of a consideration offered with the proposal, is an acceptance of the proposal."

The plaintiff proposed that if the Doyle Petroleum Corporation would pay him $120 by May 22nd he would grant it the option to obtain the lease accompanying the proposal. In addition the proposal designated three things to be done by the Doyle Petroleum Corporation. It designated that the contract presented be signed by the proper officers of the defendant corporation within 30 days; that same be redelivered to attorneys, Melton, McElroy & Vaughn; that the plaintiff be notified of the execution and redelivery of the lease to said attorneys.

All of the above requirements were met by the defendant corporation without reservation or counterproposal. All of the conditions prescribed by the plaintiff were fully "conformed to."

It is true, the plaintiff authorized defendant corporation's attorneys to deliver the actual physical possession of the lease contract only after they were convinced that actual drilling had been commenced within the time required by the lease, but inasmuch as the defendant corporation had met all of the conditions prescribed by the plaintiff, particularly in view of the foregoing sections, acceptance on its part was complete and the plaintiff was bound.

The conversations and letters between the parties preceding the execution of the contract involved showed conclusively that a contract to drill by the defendant was the paramount moving consideration actuating the plaintiff to lease. The contract is bilateral and executory and the acceptance thereof, without reservation or counterproposal, made it mutually binding.

In Rock v. Fisher, 115 Okla. 53, 241 P. 496, we stated this general proposition in the following language:

"All express executory contracts resolve themselves, upon analysis, into an offer by one of the parties and an acceptance . . . by the other. The act of acceptance closes the contract, and ordinarily nothing further is required to make the obligation effective."

The parties may make physical delivery a prerequisite to the formation of the contract; however, in the instant case the restriction contained in the proposal of the plaintiff as to the physical delivery of the written lease contract by said attorneys to the defendant is not a condition precedent to the validity or effectiveness of the contract. Though physical delivery is frequently the only method by which acceptance is to be expressed, it is not an absolute necessity unless so intended by the parties. See 12 Am. Jur. 553, § 63.

All of the facts and circumstances from the inception of this transaction indicate a willingness and intention on the part of the plaintiff to be obligated if and when the defendant was bound to drill a well on plaintiff's land or an offset thereto. The defendant would be obligated to drill as soon as it accepted plaintiff's proposal.

The contract provides that "for a failure to commence, prosecute and/or complete said test well, this lease, at the option of lessor, shall terminate." In view of all the facts and circumstances and the plain import of the foregoing sentence of the contract the contention of the defendant that actual physical delivery of the lease contract to it was essential and a condition prece-

dent to its effectiveness is wholly untenable.

Under the construction of the defendant you would have this peculiar situation "for failure to commence" a test well, the plaintiff would have the option to terminate a lease that could not be and was not actually delivered and for this reason was not effective. If the contract was not intended by the parties to become effective until actual physical delivery to the defendant, and it could not be delivered to the defendant under the instructions given by the plaintiff until drilling was commenced, then there could not be a termination thereof by the plaintiff for failure to commence actual drilling. You cannot terminate a relationship that does not exist, so the contention of the defendant in this respect leads to an absurdity. Surely this condition placed on actual physical delivery was for the purpose of serving the convenience of the plaintiff in effectuating his option to terminate a mutually binding agreement upon failure of the defendant to commence drilling within the terms of the agreement. The effective date of the lease is governed entirely by the act of acceptance by the defendant. He completely accepted the lease without inserting, or otherwise proposing, any conditions precedent to its effectiveness. The provision in the proposal relative to the physical delivery thereof goes only to performance. The contract was binding upon acceptance by the defendant. He could not, however, get physical possession thereof until he had performed to the extent designated in the offer.

The defendant is apparently confusing acceptance with performance, and what we said in this respect in the case of Crane-Rankin Development Co. v. Duke, 185 Okla. 223, 90 P. 2d 883, is particularly applicable here. We quote as follows:

"We believe the company is confusing performance with acceptance. We agree with the company's assertion that the option contract was unilateral and imposed no obligation upon the company until it elected to exercise its right to avail itself of the offer held out to it. When it did so elect it thereby simply accepted the offer made by the other party, and, when it did accept, the terms specified in the option became obligations. See 12 Amer. Jur. 524, §§ 27 et seq. It said on page 526, supra:

" 'An option, so long as it remains unaccepted, is a unilateral writing, lacking the mutual elements of a contract, but when it is accepted by the optionee, an executory contract arises, mutually binding upon the parties.'

"Acceptance and performance are essentially different, and the company's notice to Duke of its acceptance brought into existence an executory contract, which the parties were bound mutually to perform according to its terms."

In this connection see, also, James on Option Contracts, sec. 839, and Petroleum Research Corporation v. Barnsdall Refining Corporation, 188 Okla. 62, 105 P. 2d 1047.

We have carefully examined the authorities cited by the defendant and conclude that they are not applicable herein.

The action of the trial court in sustaining the demurrer to plaintiff's evidence was erroneous and this cause is, therefore, reversed.

RILEY, OSBORN, BAYLESS, GIBSON, and HURST, JJ., concur. WELCH, C.J., and CORN, V.C.J., dissent. DAVISON, J., absent.