**Al WORMS, Jr., Don J. Engel, and William H. Wylie, Partners, d/b/a WWWE Company, Appellants,**

v.

**Cecil Paul BURGESS, Russell Edd Burgess, and Vada Pauline Burgess, Surviving Spouse of William Philip Burgess, Deceased, Appellees.**

No. 53289.

Court of Appeals of Oklahoma, Division No. 1.

Jan. 2, 1980.

Rehearing Denied March 4, 1980.

Certiorari Denied Nov. 6, 1980.

Approved for Publication by the Supreme Court Nov. 13, 1980.

W. Samuel Dykeman, Richard A. Mize, Oklahoma City, for appellants.

Eagleton, Nicholson & Pate by Collier H. Pate, Robert S. Payne, Oklahoma City, for appellees.

ROMANG, Judge:

This is an appeal from the granting of a Rule 13 motion for judgment where facts are not controverted (Summary Judgment).

Plaintiff–Appellants (Optionee) are the successors in interest to the holder of an option contract[1] with the Defendant–Appellees (Optionor). Under the terms of the option contract if the Optionee "elects to exercise the option to purchase ... [described real property, the Optionor] shall be notified by registered mail on or before August 21, 1977, of the intention to so exercise said option." The Optionee dispatched its notice on August 20th but said notice was never received.

The Optionor contended the option lapsed before exercise and the Optionee sued for specific performance or damages. The District Court found no dispute as to any material fact and granted a summary judgment for the Optionor. The Optionee appeals.

A narrow yet difficult issue is presented for review: where an option contract provides for notification on or before a fixed date and the notification is timely and properly mailed by the optionee but not timely received by the optionor, is the option effectively exercised?

## SUMMARY JUDGMENT

We start with the proposition that the construction of an unambiguous contract is an issue of law for the courts. *Walker v. Telex Corp.*, Okl., 583 P.2d 482 (1978). Since no other issues were disputed the case was appropriate for treatment under Rule 13, Rules of the District Courts.

## OPTION CONTRACT CONSTRUCTION

It is clear and important to realize that the issue is one of construction. No doubt can be raised that if the parties wanted to require receipt of the notice of intent to exercise the option they could have done so. Consequently, while the issue of contract construction is for the court, the matter is not one as to which a fixed rule of law will be found. Indeed, very few of the "rules" of contract law (exceptions, e. g. would be the requirements of free consent, consideration, capacity and a legal purpose) are not capable of modification by agreement of the parties. The more important the rule, the more strictly the parties' apparent

---

1. Throughout this opinion we use the phrase "option contract" for an option supported by consideration and, hence, binding in contrast to an offer stated to be open for a fixed or reasonable period which is nevertheless revocable prior to the beginning of performance or dispatch of an acceptance (except firm offers under 12A O.S.1971, § 2–205).

agreement to modify the rule will be scrutinized.

Our prime objective, therefore, is to ascertain, from language, purpose, circumstance and case experience, what the parties most probably intended, and then, if legal, to give effect to that intent. See 15 O.S.1971, § 152.

The Optionee principally relies on the familiar "mailbox" or "dispatch" rule whereby an acceptance of an offer in which mail is an acceptable mode of acceptance is effective when deposited in the mail properly addressed and with sufficient postage affixed. See 15 O.S.1971, § 69 and *McAlister v. Klein*, 81 Okl. 291, 198 P. 506 (1921).[2] The Optionor relies on the common meaning of "notification," the irrelevancy of the "mailbox" rule for the exercise of an option contract in contrast to a mere option or offer, and general principles of interpretation.

No Oklahoma cases in point have been cited or found. The Restatement of Contracts (2d) § 64(b) expressly states:

"[u]nless the offer provides otherwise:

    \*      \*      \*      \*      \*      \*

(b) an acceptance under an option contract is not operative until received by the offeror."

In explaining the modern rationale for the "mailbox" rule in § 64(a), the Restatement provides in comment a:

"... A better explanation of the rule that an acceptance takes effect on dispatch is that the offeree needs a dependable basis for his decision whether to accept. In many legal systems such a basis is provided by a general rule that an offer is irrevocable unless it provides otherwise. The common law provides such a basis through the rule that a revocation of an offer is ineffective if received after an acceptance has been properly dispatched."

The Florida District Court of Appeals thoroughly analyzed all the authorities and scholarly criticism of the "mailbox" rule in *Morrison v. Thoelke*, 155 So.2d 889 (Fla. App.1963). It is clear that in negotiations by mail one party must be in the dark about his contractual relations during the period for transmission of the letter. The "mailbox" rule imposes this uncertainty on the offeror. This risk allocation is eminently reasonable when it is recognized that the offeror can shift this risk by requiring receipt of acceptance when he makes the offer. The reasonableness of this allocation is mirrored in the widespread commercial acceptability of the rule noted in *Morrison, supra.*

The Restatement believes a different rule is appropriate in the case of the giving of notice under an option contract because "[a]n option contract provides a dependable basis for decision whether to exercise the option ...", i. e. the parties are told by the contract exactly where the risks are. See comment f to § 64. This comment further states that "the usual understanding is that the notification that the option has been exercised must be received by the offeror before that time." Section 64(b) is predicated on 1 Corbin, Contracts § 264 (1963) and 5 cited cases (see Reporter's Notes to comment f). Two contra cases are cited. Optionor notes that the pro cases do not deal with a statute like 15 O.S.1971, § 69. In any event it is clear that while substantial support exists for the rule of 64(b) it is not as widely recognized as the "mailbox" rule of § 64(a).

Professor Corbin notes that the receipt rule "is usually held" to be appropriate. 1A Corbin § 264. His rationale is stated as follows:

"*It is believed that*, in the absence of an expression of contrary intention, *it should be held that* the notice must be received .... [T]he notice is in one aspect a notice of acceptance of an offer; but in

2. The universality of this rule (saving cases before the U.S. Court of Claims, see *Dick v. United States*, 82 F.Supp. 326, 113 Ct.Cl. 94 (1949) is seen in its recognition in the Restatement of Contracts (2d) § 64, T.D. 1–7 (1973). It is to be noted that the modern history of the rule, in contrast to many rather ancient contract rules, originates in the case of *Adams v. Lindsell*, 106 Eng.Rep. 250 (K.B. 1818).

another aspect it is a condition of the promisor's already existing contractual duty. It is *more likely to be regarded* in this latter aspect by the parties themselves. The rule that an acceptance by post is operative on mailing was itself subjected to severe criticism; and, even though it may now be regarded as settled, *it should not be extended* to notice of acceptance in already binding contracts. In any case, usage and surrounding circumstances may be determinative." (Emphasis added.)

The lineup of cases, the Restatement and Corbin are impressive. But we fail to be persuaded. The cases relied on by the Restatement are a slight majority of a few cases. Thus the overall judicial experience is limited. The rationale of the Restaters and Corbin is simply conclusionary. Scholarly analysis is helpful to courts when it provides insights, clarity and is persuasive. But the Restatement only tells us that the option contract provides a basis for decision and that the drafters believe this, i. e. RECEIPT OF NOTICE, is the "usual understanding." Similarly, Corbin, on close reading, only says that notice is not acceptance of an offer but is a condition to the offeror's duty and is "more likely" so regarded by the parties; that the "mailbox" rule has its critics; and, even if settled (as it clearly is in Oklahoma) it "should not be extended . . ." Finally, he states the key: "usage and surrounding circumstances may be determinative." We believe the cited authorities are only generally relevant to our situation, to which we now turn.

By statute

"[c]onsent is deemed to be fully communicated between the parties as soon as the party accepting the proposal has put his acceptance in the course of transmission to the proposer . . . [provided the mode of acceptance is authorized by the proposal. 15 O.S.1971, § 68]." 15 O.S.1971, § 69.

The case we find most persuasive and similar to Oklahoma law is a decision of the California Supreme Court dealing with an identical statute. In *Palo Alto Town and Country Village, Inc. v. BBTC Company*, 11 Cal.3d 494, 113 Cal.Rptr. 705, 521 P.2d 1097 (1974) the court considered an option to renew a written lease "by giving Lessor not less than six months notice in writing prior to the end of the tenth year of the term of this lease." 113 Cal.Rptr. at 706, 521 P.2d at 1098. The written notice was timely and properly mailed but not timely received.

The court held that while mail was a proper mode of exercising the option that the "giving notice" language did not mean the notice was not effective until received. The court noted cases, the Restatement and Corbin as we have, to the effect that "notice of exercise of an option is effective only upon receipt." 113 Cal.Rptr. at 709, 521 P.2d at 1101. But it was also noticed that

"[a]n option, as a matter of legal theory, is considered to have a dual nature; on the one hand it is an irrevocable offer, which upon acceptance ripens into a bilateral contract, and on the other hand, it is a unilateral contract which minds [sic, i. e. binds] the optionor to perform an underlying agreement upon the optionee's performance of a condition precedent." 113 Cal.Rptr. at 709, 521 P.2d at 1101.

The court then concluded that

"[v]iewing the exercise of an option as an acceptance of an irrevocable offer, or in other words from the optionee's viewpoint under the preceding analysis, we think it is clear that the notice of the exercise of an option falls within the language of section 1583 [identical to 15 O.S.1971, § 69]. The optionee is a 'party accepting a proposal,' namely the irrevocable offer; the notice of exercise is an 'acceptance' of that offer and signifies the optionee's 'consent' to be bound according to the terms of the bilateral contract created by the acceptance." 113 Cal.Rptr. at 710–716, 521 P.2d at 1102–03.

■ We find this analysis persuasive, especially on our facts. The California court dealt with an option to renew a lease which was treated as an irrevocable offer to continue the lease. Our facts disclose an arrangement which is nothing but an irrevocable offer to sell. We believe the dispatch rule is so widely recognized that parties

contemplating the question understand that timely dispatch is enough. The fact that someone will not know of the new contract for a while after the option is exercised is a risk attendant to the parties' willingness to deal by mail. Where the parties expressly agree that the risk of non–delivery will be borne by the optionee, that allocation will be recognized. But where the risk has not been expressly dealt with, we believe attributing the risk to the optionor best comports with the intent of the parties, especially in light of the universality of the dispatch rule and the language of 15 O.S. 1971, § 69.

Since it is clear that the Optionee properly mailed the notice of exercise in time, we hold the option was properly exercised and the summary judgment should not have been entered for the Defendant–Optionor. Since there was no motion for summary judgment filed by Plaintiffs the case is remanded to the District Court for further proceedings consistent with the views expressed herein.

REVERSED AND REMANDED.

REYNOLDS, P. J., concurring.