**APC OPERATING PARTNERSHIP,**
**Plaintiff/Appellee.**

v.

**Dale G. MACKEY and Evelyn C. Mackey; and Darrell E. Mackey and Lovell H. Mackey, Defendants/Appellants.**

No. 85–2507.

United States Court of Appeals,
Tenth Circuit.

March 11, 1988.

Philip D. Hart (Gary W. Catron, with him on the brief), McAfee & Taft, Oklahoma City, Okl., for plaintiff/appellee.

Charles B. Lutz, Jr. (Arnold T. Fleig, with him on the briefs), Speck, Philbin, Fleig, Trudgeon & Lutz, Oklahoma City, Okl., for defendants/appellants.

Before LOGAN and ANDERSON, Circuit Judges, and CONWAY,[*] District Judge.

STEPHEN H. ANDERSON, Circuit Judge.

Dale and Evelyn Mackey, and Darrell and Lovell Mackey, landowners and lessors, appeal from an order of the United States District Court for the Western District of Oklahoma quieting title in certain oil and gas leases in APC Operating Partnership. We affirm.

## I.

We substantially adopt the following statement of facts, from the district court's order. On February 1, 1976, defendants Dale and Evelyn Mackey, husband and wife, as lessors, granted to G.B. Nathan, as lessee, mineral rights to three tracts of land in Beckham County, Oklahoma. A separate lease was executed for each tract. On February 2, 1976, defendants Darrell and Lovell Mackey, husband and wife, as lessors, granted to G.B. Nathan, as lessee, an oil and gas lease concerning certain lands in Beckham County, Oklahoma. The initial primary term of the leases was for five years, expiring on February 1 and February 2, 1981, respectively. The leases were properly recorded and through various assignments came to be owned by APC Operating Partnership (APC), the plaintiff below.

The substantive terms of all four leases are identical. They provide for a primary term of five years with an option to renew the lease for an additional five year term. The renewal option reads as follows:

"In the event this lease is not continued beyond the primary term by the provisions herein contained, Lessee has the option to renew this lease for an additional term of 5 years from the 1st day of February, 1981, and as long thereafter as oil and gas or either of them is produced from said land by Lessee, said renewal to be under the same terms and conditions as contained in this lease. Lessee may exercise this option to renew by tendering to Lessor or to Lessor's credit in the above named depository bank the sum of $75.00 Dollars per net mineral acre covered by this lease, on or before the expiration date of the first primary term of this lease."[1]

R. Vol. I. tab 5, at 5.

In September, 1980, defendants mailed to APC letters purporting to change the depository for payments of delay rentals[2] and the option payments from the stated banks to Darrell and Dale Mackey "in person" at their home addresses in Sayre,

* Hon. John E. Conway, District Judge, United States District Court for New Mexico, sitting by designation.

1. The lease granted by defendants Darrell and Lovell Mackey was identical except that the expiration date was February 2, 1981.

2. Delay rentals are payments made by the lessee pursuant to a delay rental clause in a standard oil and gas lease. The lessee pays yearly rentals to delay the obligation to drill during the primary term. A provision for delay rentals is a common component of an "unless" oil and gas lease. The "unless" lease is structured so that the lease automatically terminates *unless* a well is commenced or delay rentals are paid prior to the date specified. The lease at issue here is a typical "unless" lease with the requirement for annual delay rentals during the primary term.

Oklahoma. In January 1981, prior to the expiration date of the initial primary term, agents for APC's predecessor in interest attempted to personally deliver the renewal option payments by making eight trips to the home of Darrell Mackey and eight trips to the home of Dale Mackey on January 26, 27 and 28, 1981. On January 29, 1981, these agents mailed checks for the renewal of the leases at the U.S. Post Office in Sayre, Oklahoma by registered mail, postage paid, return receipt requested, to the Mackeys at their respective addresses in Sayre. Postal records show that the Post Office delivered notice to the lessors of the registered mail on January 30, 1981, but the Mackeys failed to claim the mail and it was subsequently returned.

In 1985, APC initiated this diversity action against the Mackeys seeking to quiet title in the oil and gas leases and asking for an order compelling the Mackeys to accept the renewal payments and delay rentals. Subsequently, APC moved for summary judgment, arguing that the mailing of the renewal checks was an effective exercise of the option provisions of the leases. The district court granted the motion.

II.

"When reviewing a grant of summary judgment, this court must examine the record to determine whether any genuine issue of material fact pertinent to the ruling remains and, if not, whether the substantive law was correctly applied." *Franks v. Nimmo,* 796 F.2d 1230, 1235 (10th Cir.1986) (citations omitted). The material facts here are not in dispute, so we are left to determine if the district court correctly applied the substantive law. "In reviewing the trial court's construction of the contract, it should be noted that ordinarily the construction of a contract is a question of law for the court." *Resort Car Rental Sys., Inc. v. Chuck Ruwart Chevrolet, Inc.,* 519 F.2d 317, 320 (10th Cir. 1975); *see also Worms v. Burgess,* 620 P.2d 455, 456 (Okla.Ct.App.1980) ("the con-

struction of an unambiguous contract is an issue of law for the courts"). In reviewing questions of law, we are not bound by the district court's conclusions. *See also Energy Oils, Inc. v. Montana Power Co.,* 626 F.2d 731, 734 (9th Cir.1980); 9 C. Wright and A. Miller, *Federal Practice and Procedure,* Civil § 2588, at 750 (1971) ("it is frequently held ... that the interpretation and the construction of written contracts are matters of law and freely reviewable as such").

Oklahoma law interpreting renewal option clauses in definite term oil and gas leases is scarce, thus the district court reached its decision by reference to the law governing the payment of delay rentals. The district court's decision can be affirmed on that ground, or by a straightforward interpretation of the language in the lease provision. We turn first to an interpretation of the lease contract.

■ Under the terms of the lease, the lessee had the power to exercise the "option to renew by tendering to Lessor or to Lessor's credit in the above named depository bank the sum of $75.00 Dollars per net mineral acre covered by this lease, on or before the expiration date of the first primary term." At issue is whether APC's predecessor in interest effectively exercised the renewal option in 1981. The Mackeys argue that mailing of the payment by the Lessee does not constitute "tendering to Lessor" as required by the renewal clause. Because the lease did not *explicitly* authorize tender by mail, the Mackeys would have us read the lease to require personal delivery of the payments to them or the depository bank to effectively exercise the option. We believe that such a narrow reading of the clause is unreasonable and conflicts with Oklahoma law. The Oklahoma Supreme Court has held that "oil and gas leases, ... are to be construed and interpreted as other contracts." *Cronkhite v. Falkenstein,* 352 P.2d 396, 398 (Okla.1960).[3] The language

---

**3.** Oklahoma adds one notable exception to this general rule: "An oil and gas lease is governed by different rules of construction from those

applicable to other contracts, being construed most strongly against the lessee and in favor of the lessor." *Beatty v. Baxter,* 208 Okl. 686, 258

in a contract is given its plain and ordinary meaning unless some technical term is used in a manner meant to convey a specific technical concept. *Mercury Inv. Co. v. F.W. Woolworth Co.*, 706 P.2d 523, 529 (Okla.1985) (citing Okla.Stat.Ann. tit. 15, § 160 (West 1983)).

In these circumstances, "tender" should be read to include an offer by mail for three reasons. First, the common usage of "tender" implies no requirement of personal delivery. *See Black's Law Dictionary*, 1315 (5th ed. 1979) ("Tender" is defined as "[a]n offer of money"; "a readiness and willingness to perform"). *See also Davidson v. Rogers*, 471 P.2d 455, 458 (Okla. 1970) ("At common law, a tender of money is an unconditional offer by a debtor or obligor to pay another, in current coin of the realm, a sum not less than the amount then due on a specified debt or obligation.") (emphasis omitted). Second, an interpretation requiring personal delivery of the rental payments would effectively give the lessor the power to revoke the option—a power inconsistent with the very nature of an option contract. *See Ollie v. Rainbolt*, 669 P.2d 275, 279 (Okla.1983) ("An option is essentially a continuing and irrevocable offer by the optioner, which cannot be withdrawn by him during the stated period.") If the option to renew the lease could be exercised only by personal delivery, the lessor could simply designate a remote depository bank and then disappear, frustrating attempts at personal delivery of the payments.[4]

■ Finally, Oklahoma statutes direct us to this conclusion.[5] Okla.Stat.Ann., tit. 15, § 68 (West 1983) provides: "If a proposal prescribes any conditions concerning the communication of its acceptance, the proposer is not bound unless they are conformed to; but in other cases any reasonable and usual mode may be adopted." In this case, no means of acceptance were prescribed, and we hold that acceptance of the option to renew by registered mail was "reasonable and usual" under the circumstances. *See Farmers' Produce Co. v. McAlester Storage and Comm'n Co.*, 48 Okl. 488, 150 P. 483, 485 (1915) ("a fair and reasonable construction of [predecessor statute to § 68] is conclusive of the question in hand, and ... a reasonable and usual mode of acceptance was adopted by use of the mail.") The following section governs when that acceptance is effective: "Consent is deemed to be fully communicated between the parties as soon as the party

---

P.2d 626, 628 (1953). *See also Simon v. Foster*, 373 P.2d 28, 30 (Okla.1962); *Probst v. Ingram*, 373 P.2d 58, 62 (Okla.1962); *Lewis v. Grininger*, 198 Okl. 419, 179 P.2d 463, 464 (1947); *Eastern Oil Co. v. Smith*, 80 Okl. 207, 195 P. 773, 778 (1920). However, an examination of the Oklahoma cases applying this rule demonstrates that it is to be applied when the terms of the oil and gas lease are uncertain or ambiguous, not, as here, where the lessor urges an unreasonable interpretation of the contract language simply because that interpretation favors the lessor. *See Eastern Oil*, 195 P. at 779 ("where the terms are unambiguous there should be no interpretation placed upon the lease contract that could not be placed upon the same language used in any other contract"); *cf. Champlin Petroleum v. Ingram*, 560 F.2d 994, 998 (10th Cir.1977) ("Ambiguity under a Texas oil and gas lease should be resolved in favor of the lessor when there are two or more equally reasonable constructions."), *cert. denied*, 436 U.S. 958, 98 S.Ct. 3072, 57 L.Ed.2d 1123 (1978). *See also* 2 W. Summers, *Oil and Gas* § 372 (1959).

4. Or, as happened here, the lessor could attempt to eliminate the depository bank and then fail to be home or collect mail prior to the expiration of the primary term. Because we find that the tender was sufficient, there is no need to decide whether the Mackeys' attempt to eliminate the depository bank (rather than change it as the lease provided) was successful. However, we see no basis for this unilateral modification to the contract.

We also note that the "change in depository" submitted by the Mackeys included their mailing address and zip code. This is a point of minor significance, but does provide some evidence that the parties contemplated dealing by mail.

5. That the provisions of the Oklahoma code governing the interpretation of contracts apply equally to oil and gas leases is demonstrated by the frequent references of the Oklahoma courts to the statutory provisions. *See Davenport v. Doyle Petroleum Corp.*, 190 Okl. 548, 126 P.2d 57, 59 (1942) (applied Okla.Stat.Ann. tit. 15, §§ 68 to 70 to oil and gas lease); *see also Mobil Oil Corp. v. Flag–Redfern Oil Co.*, 522 P.2d 651, 655 (Okla.Ct.App.1973) (applied Okla.Stat.Ann. tit. 15, § 63 to oil and gas lease); *Panhandle Coop. Royalty Co. v. Cunningham*, 495 P.2d 108, 113 (Okla.1971) (applied Okla.Stat.Ann. tit. 15, § 157 to oil and gas lease).

accepting a proposal has put his acceptance in the course of transmission to the proposer, in conformity to the last section." Okla.Stat.Ann. tit. 15, § 69 (West 1983). In this section, Oklahoma has codified the "mailbox" rule, that acceptance of an offer is effective when it is mailed. Furthermore, Oklahoma has chosen to extend the "mailbox" rule to option contracts.[6] In *Worms v. Burgess*, 620 P.2d 455, 458–59 (Okla.Ct.App.1980) the Oklahoma court relied on a decision of the California Supreme Court, *Palo Alto Town and Country Village, Inc. v. BBTC Co.*, 11 Cal.3d 494, 521 P.2d 1097, 113 Cal.Rptr. 705 (1974)[7] to hold that an option was properly exercised where the acceptance was mailed, even though it was never received. In any event, this provision is not strictly necessary to determine the outcome here, because the payments were mailed in sufficient time to be delivered to the Mackeys before the primary term of the lease expired. In either case, whether acceptance is effective at mailing or delivery, it is effective on these facts and the lease was properly renewed.

■ The district court focused on the Oklahoma law applicable to the payment of delay rentals under an "unless" oil and gas lease to find an effective extension of the lease. This analysis was appropriate for the Oklahoma Supreme Court has frequently compared a delay rental provision to an option to extend an oil and gas lease:

"The [delay] rental provision granted an option to the lessee; that is, that by the payment of the rentals the time for completing the well would be extended an-

other six months. It is immaterial whether that provision be regarded as an option to renew the lease or extend the terms, or to continue the lease in force, or defer completion of a well, or to extend the time for performance of the condition to complete a well.... It has been held by a long line of decisions of this court that an 'unless' lease, such as is here involved, is a unilateral option."

*Ellison v. Skelly Oil Co.*, 206 Okl. 496, 244 P.2d 832, 836 (1952) (quoting *Garfield Oil Co. v. Champlin*, 78 Okl. 91, 189 P. 514, 520 (1920)).

*Ellison* also expresses the standard to be applied to the lessee's efforts to exercise the option presented by a delay rental clause:

"[T]he lessee must not only in good faith intend to make timely payment, but ... he must take such steps, without error or fault on his part, as would accomplish timely payment in due and orderly course but for the intervention of something beyond his control ..."

*Ellison*, 244 P.2d at 838; *see also Phillips Petroleum Co. v. Curtis*, 182 F.2d 122, 126–27 (10th Cir.1950) (applying Oklahoma law). The actions of APC's predecessor in interest fall within this standard. First, the actions show a good faith intent to make timely payment. Agents of the lessor sought out the Mackeys to make personal delivery. When those attempts failed, the payment was attempted by registered mail in sufficient time for delivery to the Mackeys before the primary term

6. The *Restatement* and scholarly authority is generally to the contrary. *See Restatement (Second) of Contracts* § 63(b) (1979) ("an acceptance under an option contract is not operative until received by the offeror"). The alternative positions and the Oklahoma court's rationale for rejecting the *Restatement* are explained in *Worms v. Burgess*, 620 P.2d 455 (Okla.Ct.App. 1980).

7. In *Palo Alto Town*, the California court applied an identical statute to hold that a lessee properly exercised the extension provision in a lease of real property when notice was mailed before the end of the initial term, even though the notice was never received by the lessor. We

believe that the Oklahoma Supreme Court would adopt the reasoning of the California Court:

"In California, ... the 'effective upon posting' rule has received legislative sanction and is the declared policy of this state. We must effectuate this policy in all cases reasonably included within the scope and language of the statute promoting this policy. As previously explained, when the notice of exercise of the option is viewed as an acceptance of an irrevocable offer, such notice is clearly covered by [the statute]."

*Palo Alto Town*, 113 Cal.Rptr. at 711, 521 P.2d at 1103.

expired.[8] There was no error or fault on the part of the lessee, and payment would have been made but for the failure of the Mackeys to collect their mail, an intervening factor beyond the control of the lessee.

Finally, the district court held that tender by mail was both possible and timely under the delay rental analogy. The court cited Professor Kuntz' treatise on oil and gas law:

> "If the delay rental provisions of the drilling clause make no reference to the payment or tender of delay rentals by mail, the requirement of a tender or payment of delay rentals is not satisfied by depositing such delay rentals in the mails on or before the due date. Actual receipt of the delay rental by the lessor or the depository bank on or before the due date is required. If, however, the delay rental was deposited in the mails in a correctly addressed and stamped envelope sufficiently in advance of the due date to permit delivery in the regular course of the mails to the lessor or to the designated depository bank, the delay rentals will be deemed to be paid although they do not reach the lessor in time because of a holiday in the lessor's office. Further, if the delay rental does not reach the lessor or the depository bank on or before the due date because of delay of the mails, then the court may or may not declare that the lease has terminated or has been forfeited. The result reached will depend upon the attitude of the court toward the consideration of equitable factors in connection with the payment of delay rentals generally and specifically in connection with the payment of delay rentals by mail."

3 E. Kuntz, *Oil and Gas* § 34.4(c), at 121–22 (1967) (footnotes omitted).[9] The district court weighed the equities and found that the lease should be extended. Based on our reading of the Oklahoma cases applying delay rental clauses in similar circumstances, *Harvey v. Benmo Oil Co.*, 272 F. 475 (E.D.Okla.1921); *Brazell v. Soucek*, 130 Okl. 204, 266 P. 442 (1928); *Oldfield v. Gypsy Oil Co.*, 123 Okl. 293, 253 P. 298 (1926), that conclusion was correct.

■ On appeal, the Mackeys argue that the district court incorrectly weighed the equities, focusing on the district court's conclusion "that the Defendants intended to avoid receipt of the payment by personal delivery and by mail." R. Vol. I. tab 14, at 4. The Mackeys argue that no evidence supports this statement by the district court. We agree that there is no evidence that the Mackeys intentionally avoided the agents of the lessee, but we do not rely on this conclusion for our holding that the equities weigh in favor of APC. As in *Harvey*,

> " 'within the fixed option time the lessee showed itself "ready, desirous, prompt, and eager," and elected and bound itself, to comply with its contract by making its check payable to the proper party and properly mailing it to such party according to the custom and rules prevailing in the transaction of such business in ample and reasonable time for the money to be' received by the lessor."

*Harvey*, 272 F. at 477. This finding, under the standards announced by the Oklahoma Court in *Oldfield* and *Brazell*, is sufficient to support an equitable ruling in favor of the lessee. Whether the Mackeys avoided the agents of the lessor is immaterial; the lessee's actions were sufficient to extend the lease and the failure of the ultimate delivery of the checks was not the result of any mistake or negligence on the part of

**8.** The Mackeys argue that the payment was not mailed in sufficient time for valid tender. In view of the fact that postal records show that notice of delivery was given before the primary term of the lease expired, this argument has no merit.

**9.** Other commentators are generally in agreement. For example, Professor Summers notes that:

> "In a number of cases in Kansas and in Oklahoma federal and state cases, the courts have held that where the failure of an unless lessee to make delay rental payments on the due date is attributable to non-delivery or miscarriages of properly mailed remittances equity will not enforce a cancellation of the lease at the suit of the lessor."
>
> 2 W. Summers, *Oil and Gas* § 344, at 435–38 (1959) (footnotes omitted).

the lessee.[10]

Finally, the Mackeys argue that APC failed to prove that the option renewal clause was assignable. The Oklahoma Supreme Court dispensed with this argument in *Castle v. Double Time, Inc.*, 737 P.2d 900, 903 (Okla.1986), holding "[a]bsent explicit contrary contractual provisions, an option to renew or to extend a lease given to a lessee by the lessor is freely assignable by the lessee."

In summary, the district court's order quieting title in the leases in APC is correct applying either general contract law or analogous oil and gas law. That order is therefore AFFIRMED.

---

10. The Mackeys also argue that, in weighing the equities, the lessee should be penalized for (1) attempting in person delivery of the option payments; and (2) not tendering the payments to the depository bank. Neither of these factors is significant. First, the Mackeys had already expressed a preference for personal delivery through the purported "change of depository." Even though the lessee had stated that it would not recognize this modification to the lease, it should not be punished for attempting to accommodate that request. Second, the plain language of the lease allows payment to the lessor *or* the depository bank. We see no reason to penalize the lessee for choosing one over the other.