**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 28, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

                          No. 16-7090

RICHARD ELBERT TURLEY,

    Defendant - Appellant.

———————————————

**Appeal from the United States District Court**
**for the Eastern District of Oklahoma**
**(D.C. No. 6:15-CV-00078-JHP)**
———————————————

Ron Wright, Wright, Stout & Wilburn, PLLC, Muskogee, Oklahoma (Reid E. Robison, and Mark D. Spencer, McAfee & Taft, P.C., Oklahoma City, Oklahoma, with him on the briefs), for Defendant-Appellant.

Michelle Windmueller, United States Postal Service Law Department, Washington, D.C. (Douglas A. Horn, Acting United States Attorney, and Robert Gay Guthrie, Assistant United States Attorney, Muskogee, Oklahoma, and Stephan J. Boardman, United States Postal Service Law Department, Washington, D.C., with her on the brief), for Plaintiff-Appellee.

———————————————

Before **LUCERO**, **BALDOCK**, and **HARTZ**, Circuit Judges.

———————————————

**HARTZ**, Circuit Judge.

———————————————

    Richard Turley appeals from a summary judgment granting the United States,

acting on behalf of the United States Postal Service, specific performance of an option to

purchase real estate from Turley.[1]  The purchase option was contained in a lease of the premises that the Postal Service had renewed on several occasions.

Turley makes three arguments against enforcement of the purchase option:  (1) the lease had expired when the Postal Service attempted to exercise the purchase option because he had not received notice that the government was exercising its final option to renew the lease; (2) even if the lease was renewed, the Postal Service did not properly exercise the purchase option because it continued to negotiate for a new lease after it purported to exercise the option; and (3) equity precludes enforcement of the purchase option because the Postal Service attempted to use the purchase option as leverage to negotiate a better lease agreement.  We are not persuaded.  The lease-renewal option was properly exercised when the notice was delivered to the proper address, even though Turley refused to retrieve it.  And Turley has presented no legal or equitable doctrine that would forbid a party who exercises (and is bound by) an option to purchase from pursuing an alternative arrangement.

## I.    BACKGROUND

In 1964 the government entered into a 20-year lease with Turley for property in Henryetta, Oklahoma (the Property) to be used as a post office.  The lease provided options to renew for six additional five-year terms and included an option to purchase at the end of each renewal term.  Written notice of renewal was due 90 days before the new

---

[1]    For convenience, we do not distinguish between Turley and his predecessors in interest with respect to the lease or between the Postal Service and its predecessor.

term began. Notice of the option to purchase was due a year before expiration of the lease term.

Because the last five-year lease term was set to begin on November 15, 2009, notice was due by August 15, 2009. In February 2008 the Postal Service sent its renewal notice by certified mail to Turley at a New York City post office box. The certified mail was returned with a stamped notification stating, "RETURN TO SENDER/UNCLAIMED/UNABLE TO FORWARD." Aplt. App'x Vol. 2 at 331. Although in district court Turley had suggested that the notice had not been sent to the correct address, Postal Service records showed that Turley had cashed lease payments sent to that address both before and after the date of the certified mail. Unsurprisingly, Turley does not dispute on appeal that the certified mail was sent to the correct address. His argument is that the notice was not effective because he did not personally receive it. For the same reason, he says that he was not bound by a notice purportedly sent by the Postal Service by regular mail the following month. His response to a request for admission said that he did not remember receiving a renewal notice.

In any event, the Postal Service continued to occupy the building and pay rent, and Turley continued to provide services required by the lease. Turley claims that he allowed the Postal Service to stay only as a holdover tenant.

During 2013 the Postal Service was considering negotiating a new lease with Turley upon the end of the last renewal term in November 2014, but its internal emails suggest it was also considering the purchase option. The deadline to exercise the option (assuming that the lease had been renewed in 2009) was November 15, 2013. In October

3

2013, CBRE, a company retained by the Postal Service to negotiate leases on its properties, sent Turley a proposal for a new lease to begin after November 15, 2014. On November 7, 2013, however, the Postal Service sent a letter exercising its option to purchase the Property, and Turley acknowledges that he received it on November 8. This did not stop CBRE from continuing to contact Turley about leasing the property. The parties disagree about whether CBRE was authorized to continue this negotiation. Claiming the Postal Service could not and did not properly exercise the purchase option, Turley refused to participate in two closings to sell the property to the Postal Service, causing the Postal Service to file this suit in the United States District Court for the Eastern District of Oklahoma.

After the parties filed cross motions for summary judgment, the district court granted summary judgment in favor of the Postal Service for specific performance. Turley appealed. We have jurisdiction under 28 U.S.C. § 1291 and affirm the summary judgment.

II.     DISCUSSION

A. Standard of Review

We review summary judgments de novo, applying the same standards that the district court should apply. *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1218 (10th Cir. 2006). "When reviewing a grant of summary judgment, this court must examine the record to determine whether any genuine issue of material fact pertinent to the ruling remains and, if not, whether the substantive law was correctly applied." *APC*

4

*Operating P'ship v. Mackey*, 841 F.2d 1031, 1033 (10th Cir. 1988); *see* Fed. R. Civ. P. 56(a).

### B. Applicable Law

"[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988). But federal law may adopt state-law rules. *See O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 85 (1994). Thus, "knowing whether federal law governs . . . does not much advance the ball." *Id.* (internal quotation marks omitted). Indeed, there is a "presumption that state law should be incorporated into federal common law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 98 (1991). "Displacement [of state law] will occur only where . . . a significant conflict exists between an identifiable federal policy or interest and the operation of state law or the application of state law would frustrate specific objectives of federal legislation." *Boyle*, 487 U.S. at 507 (citations, brackets, and internal quotation marks omitted). We agree with the Ninth Circuit that state law should apply in the present circumstances because "[l]ease contracts for the postal service do not inherently implicate clear and substantial interests of the National Government, which cannot be served consistently with respect for state interests." *U.S. Postal Serv. v. Ester*, 836 F.3d 1189, 1195 (9th Cir. 2016) (ellipsis and internal quotation marks omitted); *cf. Powers v. U.S. Postal Serv.*, 671 F.2d 1041, 1045 (7th Cir. 1982) (setting forth reasons to apply state law to decide Postal Service's rights under a lease).

Because Oklahoma is the state where the Property is located, we conclude that Oklahoma law should govern this dispute. *See Denney v. Teel*, 688 P.2d 803, 806 (Okla.

5

1984) ("Disputes concerning interests in real property are properly governed by the law of the state where the land is located."). We determine what that law is in the same manner that we resolve questions of state law under our diversity jurisdiction. *See generally* Bryan A. Garner et al., *The Law of Judicial Precedent* 598–616 (2016). We must follow the latest holdings of the state's highest court. *See Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th Cir. 2003). In the absence of a definitive resolution of the legal issue by the highest court, our task is to predict how that court would rule. *See United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004). There are various tools at our disposal for making that prediction, including decisions by lower courts of the state. *See id.* We are bound, however, by precedents of this court construing state law, absent an intervening decision by the state's highest court or a legislative change. *See Wankier*, 353 F.3d at 866.

### C. 2009 Lease Renewal Option

Turley's chief argument against the judgment below is that the Postal Service never renewed its lease for the term beginning November 15, 2009, and therefore the purchase option was no longer valid when the Postal Service attempted to exercise it in 2013. He contends that the 2009 lease-renewal option could be effective only if he received notice of exercise of the option, but he never received the certified mail containing the renewal notice. We are not persuaded.

We have a controlling precedent. In *APC Operating Partnership*, 841 F.2d at 1032–33, a lessee of mineral rights, in exercising its option to renew a lease by tendering the designated sum, mailed the required checks by registered mail, postage paid and

6

return receipt requested, to the lessors at their addresses. *See id.* at 1033. But the lessors failed to claim the mail and it was returned. *See id.* Applying Oklahoma law, we held that the exercise of the option was effective. *See id.* at 1035. "There was no error or fault on the part of the lessee, and payment would have been made but for the failure of the [lessors] to collect their mail, an intervening factor beyond the control of the lessee." *Id.* at 1036. Although there was no evidence that the lessors intended to avoid receipt of payment, that was "immaterial." *Id.*; *see id.* at 1034 (refusing to "effectively give the lessor the power to revoke the option—a power inconsistent with the very nature of an option contract"). We see no principled way to distinguish our precedent from this case. The Postal Service did all it could do to exercise the option by sending a timely notice by certified mail to the proper address. Notice would have been received "but for [Turley's] failure . . . to collect [his] mail, an intervening factor beyond the control of [the Postal Service]." *Id.* at 1036. Because the notice by certified mail was effective, we need not address the Postal Service's alternative arguments in favor of determining that the lease had been renewed.[2]

---

[2]    On appeal Turley also makes an argument based on the contents of the Postal Service website that maintains information on leases held by the Postal Service. It purportedly listed the Property as not having a purchase option. He contends that this constitutes an admission by the Postal Service that it had not exercised the option. We are skeptical of the argument, in part because his redactions from the website document make it meaningless. In any event, we need not address the argument because it was not raised below. Turley presented the website evidence to the district court only in support of an argument that when the contract was assigned to Turley by earlier lessors, the purchase option did not survive.

7

Turley contends that the Postal Service expressly waived its reliance on *APC Operating* when it noted in its brief that "the Postal Service has never argued in this case that the notice became effective with the date of mailing." Aplee. Br. at 18 n.2. But this concession related only to the *timing* of the exercise of the renewal option, not whether notice was *adequate*. The same distinction was made in our opinion in *APC Operating*. We noted that the Oklahoma Court of Appeals had "chosen to extend the 'mailbox' rule to option contracts," holding "that an option was properly exercised where the acceptance was mailed, even though it was never received." 841 F.2d at 1035 (citing *Worms v. Burgess*, 620 P.2d 455, 458–59 (Okla. Civ. App. 1980)). But we said that it was unnecessary for us to go that far to resolve the case before us. We wrote:

> In any event, this provision is not strictly necessary to determine the outcome here, because the payments were mailed in sufficient time to be delivered to the [lessors] before the primary term of the lease expired. In either case, whether acceptance is effective at mailing or delivery, it is effective on these facts and the lease was properly renewed.

*Id.* Likewise, here, notice from the Postal Service was timely whether it was effective at the time of mailing or the time of delivery to the post office. The real question is whether the notice was adequate despite Turley's failure to retrieve the certified letter. And *APC Operating* provides the answer.

### D. Effect of Continuing Lease Negotiations

We can quickly resolve Turley's remaining contentions. They are all based on evidence that even after it sent its notice to exercise the option to purchase, the Postal Service continued to try to negotiate terms of the lease for the Property. Turley argues that the lease negotiations created uncertainty about the Postal Service's intentions,

undermining the purpose of requiring that notice be given a year before expiration of the lease term. But there was no uncertainty that the Postal Service was bound to purchase the Property once it had given notice that it was exercising its option. *See Davenport v. Doyle Petroleum Corp.*, 126 P.2d 57, 61 (Okla. 1942) ("An option so long as it remains unaccepted, is a unilateral writing lacking the mutual elements of a contract, but when it is accepted by the optionee an executory contract arises, mutually binding upon the parties" (internal quotation marks omitted)). Turley knew, or at least should have known, that if he did nothing, he would be required to transfer the Property to the Postal Service for a sum certain. The Postal Service was merely giving him the opportunity to reach an alternative agreement—leasing the Property on terms agreeable to Turley. If those terms were good enough, the Postal Service would not enforce its rights under the option, just as Turley would not exercise his right to require the Postal Service to pay the designated amount and obtain the Property. *See Richardson v. Lawler*, 231 P.2d 671, 674 (Okla. 1951) ("Parties competent to contract may as validly agree to rescind a contract as to enter into the original agreement.").

Nor was there anything inequitable in the Postal Service's negotiating lease terms after exercising the option. To be sure, its bargaining position in those negotiations was enhanced by its having the enforceable right to acquire the Property at the option price. But the owner of property typically has the bargaining chip of being free to keep the property. Turley points to no evidence of any misrepresentations, unclean hands, improper motives, or bad-faith actions that would present an equitable ground for denying the Postal Service specific performance of its option contract.

9

We also see no factual support for Turley's claim of waiver or equitable estoppel.

As stated by the Oklahoma Supreme Court:

> A waiver occurs when one in possession of any right, whether conferred by law or by contract, and with full information of the material facts, does or forbears the doing of some things inconsistent with the existence of the right or his intention to rely upon it; thereupon he is said to have waived it, and he is precluded from claiming anything by reason of it afterward.

*Whitmire v. Zolbe*, 403 P.2d 445, 448 (Okla. 1965) (internal quotation marks omitted).

But there was nothing inconsistent about the Postal Service's conduct. One who owns or expects to own property (as did the Postal Service, armed with its exercised option to purchase) can reasonably and fairly pursue other possibilities for the property. For the same reason, equitable estoppel cannot prevent specific performance in this case. As Turley acknowledges in his brief, "'Equitable estoppel allows one party to prevent another from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage.'" Aplt. Br. at 49–50 (quoting *Kowalczyk v. I.N.S.*, 245 F.3d 1143, 1149 (10th Cir. 2001) (further internal quotation marks omitted)). But, again, there was nothing inconsistent in the Postal Service's continuing to negotiate, given that the two parties could have mutually agreed to forgo the purchase option in favor of a new lease. *See Richardson*, 231 P.2d at 674.

Finally, contrary to Turley's contention the Postal Service did not slumber on its rights to the purchase option by continuing to negotiate for a lease. Turley contends that the Postal Service "was not 'willing' or 'eager' to perform that contract at all times" and thus was not entitled to specific performance. Aplt. Br. at 44. But he presents no

10

evidence that the Postal Service indicated that it would refuse to perform its obligations under the exercised option absent an alternative agreement with Turley.

## III.    CONCLUSION

We **AFFIRM** the district court's entry of summary judgment.